24-12479. But just as an initial matter, before we get started, for those of you who haven't been here before, who might not be familiar with the way that we run things, we're going to be hearing four cases today. I certainly know that Mr. Birch is familiar with our protocols, but we run on a traffic light system. So you will see, as the lawyers are speaking, when it is green, they are free to keep going. When it is yellow, that is their two-minute warning. And when the light turns red, that means wrap up your thought, not start your final point. Unless, of course, we have questions, we may run you through the red light. Anyway, with that, Mr. Birch, you may proceed. I do see that you have reserved time for rebuttal. Yes, Your Honor. Thank you, and may it please the court. When Akeem Muhammad was an inmate at Zephyr Hills Correctional Institute, he filed a grievance against the director of the mental health unit, alleging that she allowed inmates to mistreat – excuse me, allowed guards to mistreat inmates within the unit. The next day, that director indicated to Mr. Muhammad that she was aware of the grievance and displeased by it, and shortly thereafter, five guards showed up at his cell to search it. One of those officers then placed him in handcuffs behind his back, walked him out into the common room to a table near the middle, and gave him the option of having a seat. When Mr. Muhammad indicated he would prefer to stand, the officer at that point swept his legs out from underneath him, slammed him on the floor, landed on top of him, jammed a finger in a pressure point in his neck using a pain compliance technique, and held him there for approximately two minutes. Because of that, Mr. Muhammad sued the officer, Officer Turner, for using excessive force, but the district court granted summary judgment in the officer's favor, finding the video camera of the common room contradicted Mr. Muhammad's allegations. This court should reject that decision and remand this case to the district court for trial. Now let's start with what the video shows and what it doesn't show. It picks up when Mr. Muhammad is still in the cell and the officers are inside with him. We can't see all of them on the video camera and we can't hear everything they're saying, but we do know that Mr. Muhammad alleges at that point that he's asking the officers to place him in handcuffs to take him out of the cell because otherwise they were going to take him out with no handcuffs on. And at that point, Officer Turner orders him to submit to handcuffs and he does comply with that order. And then he alleges that Officer Turner says to him, Dr. Boyce doesn't like the grievance you filed and, quote, you're going to pay for it. So according to Mr. Muhammad, everything that happened after that has to be viewed through the lens of that allegation because it shows what Officer Turner's intent was that day. And the intent was to punish him for filing the grievance, to maliciously use force to harm him for the grievance he filed. Does that really matter for – does that matter for whether there was an Eighth Amendment violation or are you just saying that it helps inform why the officer acted as he did? It's both. Part of the Eighth Amendment analysis is the subjective state of mind of the officer using force. And that allegation goes to his state of mind, what his purpose was that day. It shows that he was acting maliciously. But if the question – I guess what I'm asking is if the question is whether the officer used excessive force, then does it matter – let's say that he had gently patted him on the back. Even if he did that meaning to hurt him but really didn't, then that wouldn't matter, right? Or would it for some reason? You're correct. There's an objective part of the analysis as well that looks to the nature of the harm itself or nature of the force itself. So there are multiple elements that we look at, one being the state of mind of the officer, what his purpose was. Was he acting maliciously to cause harm? And then we look objectively to the nature of the force as well. So we look at those things together to see if the force used that day was excessive. And all of those factors in this case point to the fact that it was or that a reasonable jury can look at this and reach the conclusion that this force wasn't necessary that day. So looking at some of these other factors, you have sued only one officer, Officer Turner, correct? Correct. But your client has argued that Officer Turner used the two officers to use – there were two officers, at least two officers involved after the takedown on top of him in the video. That Turner used two officers to exert some harmful force on Muhammad. Can you explain the argument for why we should consider the action of the other officers who helped restrain Muhammad? I think the only extent to which that matters is when Mr. Muhammad alleges that while he's on the ground not resisting and those other officers are lying on top of him, one of the officers said to Officer Turner, can we pick him up now? And Officer Turner said no. So that's really the only thing that's central to his allegation against Officer Turner himself. Outside of that, I think the presence of those officers doesn't really matter. The focus of the claim really is on Officer Turner and what he did that day, and he's always maintained his allegations against Officer Turner for using excessive force. And he was the only one that did the takedown originally, Turner. That's correct. And when he's on the ground, he's the only one that's alleged to have had the pressure point and be doing the pain tactics. Is that correct? That's correct. Yes, Your Honor. And really, if you look at the video, the other officers are kind of around, but they're not so much doing. That's correct. They're holding or doing the pressure because he's in handcuffs the whole time. That's correct. Right? During the whole incident. And isn't really the issue in the case, the district court said the video contradicted everything. And the problem is the video is far from clear about anything. I agree with that, Your Honor. But that's just really the whole case, isn't it? I agree. The district court relied on the video. I mean, he not just relied on the video. He says under Scott v. Harris in those cases, it clearly shows that there was nothing. And your argument is that's not what the video shows. It's one, you can't tell the audio, so you can't tell what's going on at all. We've tried several times. You can't hear the audio. And that if you look at the video, absent the audio, you really can't tell what's going on here. Other than you see him just, he's on handcuffs. He then grabs him, takes him down, and there we are. I agree, Your Honor. The video is not clear on this point. But the district court looked at it and said it clearly contradicted Mr. Muhammad's allegations. But a reasonable jury could look at this video and reach the opposite conclusion because there's nothing in the video that clearly shows a need for force or that Mr. Muhammad was resisting in any way or that the amount of force used was necessary to gain compliance with any orders that were given to Mr. Muhammad. What about the fact that in the video you can, right before the takedown occurs, you can see Mr. Muhammad sort of take a half a step to the side? Mr. Muhammad alleges that Officer Turner actually pushed him to the side a little bit, and nothing in the video contradicts that. And honestly, I think a jury could look at the video and not see any movement to the side really at all. It's only minor at the most. And there's nothing in there that would indicate a need for force that was used by Officer Turner like it was in this case. Mr. Muhammad had his hands cuffed behind his back. He's 135 pounds. He's 5'5". Officer Turner is nearly twice his size. And we know that there was no perceived threats that day on Mr. Turner's part because they were originally going to take Mr. Muhammad out of the cell with no handcuffs on at all. And Mr. Muhammad didn't have a disciplinary infraction or only one over the previous seven years. So there wasn't any perceived threat that day, no need. I don't know that any of that matters. It's really what happened at that time, whether he was disobeying orders and whether he did anything to require a pretty aggressive takedown is what I would say. I agree. And then what happened on the floor? I agree. The takedown was too much. And I'm glad you mentioned the floor as well because the district court said nothing about that. The district court only looked at the video and analyzed the takedown, the slamming on the concrete floor, but then said nothing about what happened after that. And Mr. Muhammad alleges that once he's on the ground with roughly 1,000 pounds of officer— He alleges two excessive force, one the takedown and one then what's on the floor. Yes. Okay. We got that. You make that clear in your brief. But the pushing aside, one way to view the video is it's one continuous act. I mean, the video's not entirely clear. I agree with that. I mean, that's what you have to agree with. It's not clear. The district court says it's clear, nothing's wrong. You say it's far from clear. I agree. And you take the affidavit and the video and there you are. I agree. Okay. And, again, the district court said nothing about the force on the ground. So Mr. Muhammad alleges that when he's on the ground, Officer Turner places a thumb into a pressure point in his neck and leaves it there for approximately two minutes in what's called a pain compliance technique. It's designed to inflict pain. But he wasn't resisting at that point. And this court is long sad that when the resistance stops to the extent there was any, the force has to stop as well. But in this case, that force continued. And because that initial takedown was excessive, a reasonable jury could reach that conclusion. And because the force continued after he's on the ground and not resisting at that point, a reasonable jury could look at his circumstances and find that nothing in the video contradicts Mr. Muhammad's allegations. And because of that, we ask this court to remand this case back to the district court. Does your argument rely on how long Turner restrained Muhammad after the takedown? I think that's a factor that's fair for this court to consider because he does hold him there for approximately two minutes on the ground. And Mr. Muhammad alleges that after roughly about 30 seconds, one of the officers, not Officer Turner, says to Officer Turner, can we pull him up? And Officer Turner says no. So he continues to hold him there for approximately another minute and a half with the thumb and the pressure point on his neck beyond any time that was necessary at that point. And we can't, the video does not, because of the positioning of the gentleman on this video, we can't tell during that period what is happening, whether there's any resistance. That's correct. We can't see Mr. Muhammad. He's shielded by the four officers on top of him. We can't see exactly what Officer Turner's doing, so the video doesn't contradict his allegations. And for that reason, we ask this court to remand. You say two full minutes. I looked at that video. I don't remember him being on the ground two full minutes. You say if the video's going to count me down two minutes? Approximately, from the time he's taken down to the ground to the time they actually pulled him up. It's roughly two minutes, maybe a little bit less. Because it just seemed a lot shorter than that. Everything does happen pretty quickly, but it's roughly two minutes what's he's on the ground. Okay. Thank you, Your Honors. Thank you. And before you get started, we may be having a live stream problem, so let me hold on one second and check on that. Valerie. Thank you. We may have a live stream problem, but we are, in fact, recording. So we are ready to proceed. Mr. Flynn Fallon. Good morning. May it please the Court. Correctional officers may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions to initiate force before responding. When a video clearly contradicts plaintiff's testimony, then the Court must accept the depiction of the video over plaintiff's testimony. The fixed-wing footage here shows Muhammad, a resisting prisoner, pulled away from a pulley turner where he used the minimal amount of force necessary to bring him into compliance. The big problem for you is the video, because you have Mr. Muhammad making allegations that are directly contrary to Officer Turner's perspective. And you have a video that shows once we see Mr. Muhammad taken out of the cell, at best he takes, when he's over by the tables, maybe shuffles, maybe shifts his weight, there's like a half-step, and then he is taken down. And we can't see anything that really happens once he's on the ground. So you have a video that you're suggesting the video contradicts what Mr. Muhammad's complaint says. But that's going to be your biggest obstacle for me, is your video is not showing how Officer Turner's recitation of the facts wins out. Yes, Your Honor. So in addressing that, there are some things that aren't disputed in this that's not shown on the video. So I know that audio is one thing that is not entirely clear in the video. But it's not disputed that Officer Turner ordered Muhammad to sit down. There's been a back-and-forth about whether it was an order. Yeah, there's certainly a back-and-forth as to whether it was an order or per the sort of informal protocol of the jail, sometimes requests would be made. Correct. That is certainly Muhammad's allegation and contention in this. But as explained in the briefing and including the district court, it was clear that he at some point told him to sit down. And even if Muhammad had misunderstood this as an option and not an order, when he turns to him and begins to direct him into the seat, that should unequivocally be understood as an order that he needs to be sitting down. Here's the problem. Even if Turner said, sit down, and Muhammad said, screw you, I'm not going to do it, I'm not confident that that gives, or I should say I am confident that that does not give Turner the right to use the amount of force that at least Muhammad alleges was used here. And that does not seem to be disproven by the video. And, Your Honor, I generally would tend to agree with that, except that's not what caused Turner to use force to begin with. It wasn't the mere fact that he was refusing to sit down. It's that as he's directing him to the seat, he begins to pull away from him. His body, according to Turner's affidavit, he tenses up. And that's when he first started to get wind that there was something potentially going to go wrong. And then as clearly seen in the video, you see Muhammad take a step to the right and lean in that direction in an attempt to pull away from him. Okay, the video, to be fair, looking at the video, I knew what your contentions were before I saw the video. And even knowing what Officer Turner's contentions are, it is very hard to see that Mr. Muhammad is pulling away. It is a half a step at best, and it looks like if Officer Turner is pushing him toward the seats, it looks like it's an off-balance move. It does not in any way look like he's pulling away. So the video is not helping you in this. Your Honor, I would disagree with that because the seat is in one direction. That's where he begins to guide him, and he's stepping to the right away from the seat. I can understand with the angle of the camera that it's not as obvious as we'd maybe want it to be, but it's certainly clear enough to show what happened, which is that he turns to direct him into the seat, and then he steps away and leans in a different direction from the seats. Well, speaking only for myself, it's not clear to me. Understood. The force used was minimal. Frankly, it's also a de minimis use of force as well. So the allegation that Mr. Muhammad has said is while he, after the takedown, which is kind of, it kind of, it surprised me how quickly it happened and that it escalated so quickly. But he's taken down, and then a pain technique is applied, and he's on the ground for roughly two minutes. We can't see the imposition of the pain technique because Officer Turner's back is blocking our view from the video, and we can't see if there's a need for the pain technique. How does the video help you overcome Mr. Muhammad's allegation that this was an uncalled-for pain technique administered to him? Well, Your Honor, frankly, even if the video doesn't clearly show whether it was applied or for how long, he had pulled away. He was being resistant. They held him down briefly on the ground and got off him. You know, our contention is that there really was not a long-term pain technique used here. That is certainly his contention. I don't see him, his hand really on his neck. I see his knees off to the side and him generally holding him, you know, in the shoulder area and not necessarily by the neck, so I don't believe that the video necessarily fully contradicts our case. What do we do with the fact that he's handcuffed the whole time behind his back? Isn't that highly important here? I'm sorry. What do we do with the fact he's handcuffed behind his back the entire time? Right. Okay, and so I'll even accept maybe he took a step, a half step. You can call it pulling away. I don't know. It may be part of the continuous move of the officer pushing him. He's handcuffed the whole time. I mean, what is it that the risk of anything to the officer at this time? He's not doing anything. I mean, so he takes a step to the right. I'm just trying to understand the need for the pretty violent takedown. Well, Your Honor, first of all, I would disagree with the categorization that was a violent takedown. Well, let's get over that. Let's just say the takedown at all to the concrete floor, to put him down on the floor. And what is the need to do anything? He's handcuffed the whole time. He's standing there. Maybe there's a half step. Yes, Your Honor. Just because he's handcuffed does not mean that he should be able to roam freely or be able to do what he would like. Officers are trained to maintain a custodial grasp on the inmates, and that's exactly what Turner was doing here when he was trying to hold on to him and maintain control. And so when he begins to pull away from him and take that step, he doesn't know. This is after he's not sitting down and trying to direct him into a chair. Well, we can't hear any video, so we can't know anything about whether he's trying to get him to sit down or not. Well, that's not – well, actually, in this case, we can't hear that, but it's not disputed because Muhammad has agreed that he – Yeah, he agrees. He told him that, and he said he didn't – he viewed it as a request. And then he didn't think he had to – he said, I want to stand. Yes, correct. And, again, my position is that when he goes to – when Turner turns and you see him just to the left of Muhammad and begins to start to direct him towards the chair – Yes, and you agree that he didn't take this so-called step until your officer has his hand on him and is turning him. I mean, the hand on him and turning him happens first. So – Before the step. The stop right there. Yes, he turns to Muhammad and begins to direct him towards the chair. No, he's got his arm on him. He's got his arm – Turner's got his arm on Muhammad and is turning him before there's the alleged step. And the issue is, is it a step or is it a push or is it part of the turning or what is it? Well, frankly, either way, Your Honor, whether it's a step, a pull. I mean, he's not complying with Turner and is – even if he's trying to leisurely stroll away from him, he has no right to be doing so, and he has the right to maintain his custodial grasp and make sure that he does not – How is the takedown going to get him to sit in the chair? I mean, he takes him down to the floor. If he wants him to sit in the chair, how is that accomplishing anything? Well, Your Honor, the only reason that this use of force happened to begin is because Muhammad pulled away from him. Okay, so we have to accept – And so I'm sure he didn't want to go down to the ground with him on the floor. Okay, so it's not that he didn't sit down immediately. The reason he says he could do this is he was pulling away from him. Correct. After he put his arm on him trying to turn him to sit down. Yes. Okay, I got it then. Yes. So let me ask you, once the takedown occurs and the video is showing us that Mr. Turner is kneeling, at the very least, beside Muhammad, are you saying that no pain technique was administered or that, yes, the pain technique was administered, but there was a penological interest for this? Your Honor, I don't recall off the top of my head exactly that particular portion of the video they are referring to. Not that video. Mr. Muhammad has alleged that at that time a pain technique was applied to the back of his neck. Is your client saying, I didn't do that, or, yes, I did, and there was a good reason for it? My understanding is that there is no recollection of a pain technique being applied at that time. Okay, so he's not saying, yes, it happened, and I was justified. He's saying, I have no recollection, therefore, I'm denying that it occurred. Yes. I would argue that there is a reasonable basis if he had applied a pain technique, though. But that's not his position. He is saying, I have no recollection, therefore, I deny it. Yes. Okay, got it. I just would like to circle back real quick. Just that, you know, even though not everything in the video is visible the entire time, the real question is whether it documents the scenario sufficiently to give an objective view of what happened. And that is what has been done here with the fixed-wing video. It seems, based on the questions you're receiving, that your client will be able to make some great arguments to the jury about what happened. And Mr. Muhammad will be able to make his arguments. And since the video is not entirely clear, the jury will sort that out. Do you think that the video is clear enough that no reasonable jury could accept Mr. Muhammad's account of things rather than your client's? Yes, Your Honor, I do. Because the real crux of this entire case is about not whether he, you know, was ordered to take a seat or not, or when he was turned, it was about Muhammad pulling away and resisting the officer, which is what caused him to try and maintain him. And frankly, look at the video. I mean, while trying to hold on to him, he sort of ends up kind of tripping over him, and that's really where they go down. And he goes down with him. So, I mean, it's not like he slammed him on the ground. I mean, he goes down with him and tries to hold on to him. Do we have an explanation for why he needed to be held on the ground, pain technique or not, for that long? I mean, the record does show he was a much smaller person. I think we're looking potentially at a different story if he's 6'7", 275, and you need these four guys to hold him down. But the video does reflect that he's a rather slight man. He is on the ground for approximately two minutes or so. But just because he's on the ground is not inherently a problem. Perhaps if all the officers were staying on top of him for that entire time, then that perhaps could be a different question based on the specific facts. But in this case, they're just keeping him there. And really, only two officers are still holding him down. Initially, once he's on the ground and they turn him over, there's a lot of officers holding him, but they very quickly, within seconds, start to let off of that. And there's only two officers remaining holding him on the ground. Have I got this wrong? You acknowledge one time one of the other officers, not Turner, says, can't we let him up? I thought that happened twice. They say, can't we let him up? And Turner says no. I mean, he's not doing anything. And they said, let's get him up. And Turner says no twice. Is that wrong? I do not believe Turner has a specific recollection of them saying that. But that being said, Turner doesn't. I know, but is there testimony that Muhammad, I guess, says that? That is what he has said. Okay. And so it's at least twice he says, all the officers says, can't we get him up? And Turner says no. That is his contention, but I'd also like to know if that. No, that's his sworn testimony. Yes. Okay. And is that rebutted by your, does Turner say no, that didn't happen? Or he just says he doesn't recall? Turner's going to have to say that did not happen. And he's not their supervisor either. So there would really be no reason for them to be seeking his permission to be letting him off the floor. The reason, Your Honor, just to try and provide some context, the reason I believe they held him on the ground is they were waiting for a lieutenant, their superior, to arrive and assess the situation. And at that point, they set him up. Merely because he's lying on the ground versus sitting at the table, you know, really should not be a major contention or cruel and unusual for Muhammad. All right. Your Honors, because there was not excessive force used here and because the video clearly contradicts plaintiff's testimony, I would ask that you affirm the district court's decision. Thank you very much. Mr. Birch, you have four minutes. Thank you, Your Honors. I'd just like to make a couple of quick points. Mr. Turner's attorney says the crux of this case is Mr. Muhammad pulling away. But I agree with Judge Branch that it's very difficult in the video to see him pulling away, and that would be inconsistent with everything he'd done up to that point that day. He alleges that he was the one asking the officers to place him in handcuffs. He willingly walked out of the cell with the officers. He walked to the table with the officers following orders. So to find that he clearly pulled away at that point, despite what the video shows, would be inconsistent with all of his actions up to that point. And then the other thing I'll mention is Mr. Turner's attorney says that just because his hands were cuffed doesn't give him the right to roam around freely, and that's why Officer Turner was allowed to use force. But if you look at a video in this case, roughly a minute in after it starts, you'll see other officers approaching the cell next door to Mr. Muhammad's. They open that cell door, allow the inmate to walk out freely with no handcuffs. He is able to mingle amongst the officers, no handcuffs on, no restrictions. So it doesn't quite add up that there's a need to use force against Mr. Muhammad who has handcuffs on just because he shouldn't be allowed to run around freely, in his attorney's own words. Ultimately, this case boils down to the idea that there was no real need for Officer Turner to use the force he used in this case. It was too much. I didn't look at the other parts of the video. I only looked at the incident. Is that before this incident or after this incident? We see another inmate come out, not handcuffed. It's before. It's before. Okay. It's roughly a minute or within a minute when the video starts. Okay. I just looked at where it started here to see what was going on. Yeah. That's kind of interesting. It is. And this is a self-contained mental health unit. Right. This is a pod, and it's—I don't know how many cells there are, but it's a very contained area. That's right. Nobody's running away, is what I'm saying. That's right, John. And it shows the officers aren't imposing strict discipline in this unit because they're allowing some of those inmates to walk around freely with no handcuffs. Yet Mr. Muhammad, who's in handcuffs, was violently slammed to the floor without need. And for that reason, this court should remand this case back to the district court. Thank you, Your Honors. Thank you both. We have your case under advisement. Was he appointed? Yes, and thank you very much, Mr. Birch, for serving in this case. We have your case under advisement. Thank you. We're not going to take a break. She's going to run. Okay. I don't have one because I have cataracts. I don't. There you go. Thank you. Thank you, Birch. Thank you.